MARK E. MILLER (S.B. # 130200) markmiller@omm.com
ANNE E. HUFFSMITH (S.B. # 236438) ahuffsmith@omm.com
SARA E. JERUSS (S.B. # # 258716) sjeruss@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: 415.984.8700
Facsimile: 415.984.8701

Attorneys for Defendant and Counterclaimant
ADVANCED MICRO DEVICES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY BENDER,<br><br>          Plaintiff and Counterdefendant,<br><br>v.<br><br>ADVANCED MICRO DEVICES, INC.,<br><br>          Defendant and Counterclaimant. | Case No. C09-01149 MMC (EMC)<br><br>**ADVANCED MICRO DEVICES, INC.'S NOTICE OF RENEWED MOTION AND RENEWED MOTION TO STRIKE INFRINGEMENT CONTENTIONS**<br><br>**DISCOVERY MATTER**<br><br>Date: April 21, 2010<br>Time: 10:30 am<br>Courtroom: C, 15th Floor<br>Judge: Hon. Edward M. Chen |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 21, 2010, or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, Magistrate Judge of the United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom C, 15th Floor, there will be a hearing on Defendant Advanced Micro Devices, Inc.'s ("AMD's") Renewed Motion to Strike Plaintiff Gregory Bender's Infringement Contentions. This Renewed Motion is based on the Notice of Renewed Motion and Renewed Motion, the Memorandum of Points and Authorities in Support, the Declaration of Sara E. Jeruss, the [Proposed] Order filed herewith, all of the files and records of this action, and any additional material that may be elicited at the hearing of this Renewed Motion.

**RELIEF REQUESTED**

AMD seeks an order striking Bender's infringement contentions for failure to comply with Patent Local Rule 3-1.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On February 1, 2010 Judge Chen issued an Order compelling Bender to serve amended infringement contentions ("Order"). Bender served amended infringement contentions on February 26, 2010. There are, however, no substantive differences between the original and the amended contentions. The amended contentions fail to comply with the Order or with Patent Local Rule 3-1. AMD therefore renews AMD's motion to strike Bender's infringement contentions.

The only change in Bender's amended claim charts is the addition of language **from the asserted patent**—as opposed to additional information **regarding AMD's products** as required by the Order. The additional language from the patent does not identify specific structures or the specific locations of any structures within the accused AMD products.[1] Bender again failed to provide any information specific to AMD's accused products, and repeated the cutting and pasting of generic descriptions instead of linking the claim limitations to structures in the accused products. And Bender continues to rely on three product groups for all 137 accused products, again failing to provide any justification for the groups and improperly grouping products having different structures and functions. For at least these reasons, Bender's amended contentions fail to facilitate discovery or move the case forward in the manner contemplated by the Patent Local Rules. Having failed to provide any information specific to AMD's accused products in response to the Order, Bender cannot now demonstrate the good cause necessary to be afforded yet another opportunity to amend the infringement contentions.

**II.     FACTS**

AMD moved to strike Bender's infringement contentions for failure to comply with Patent Local Rule 3-1. (Docket No. 26.) Judge Chen held a hearing (Docket No. 44), and then ordered Bender to serve amended infringement contentions. (Docket No. 45.) On February 26, 2010,

---

[1] By analogy, if Bender was required to provide the exact location of a red house with a garage, he initially responded by asserting: "the house is located in California, which is located in the United States." Ordered to provide the street address for the house, Bender amended his response to add that "the house is red and has a garage." Such a response adds no information regarding the location of the house.

1  Bender served amended infringement contentions, including an amended list of accused AMD
2  products and three amended claim charts. (Exs. A-C.[2]) The following chart illustrates the limited
3  amendments to Bender's infringement contentions for the AMD All-in-Wonder HD:

| Claim 8 (key language highlighted) | Original Infringement Contentions | Amended Infringement Contentions (Bender's "revisions" highlighted) |
|---|---|---|
| a pair of opposing current mirrors whose inputs are connected to said first current rail of said first input buffer and whose outputs are combined together; | There are many instances of this element contained in AMD Chipsets and Motherboards, including but not limited to the following locations:<br><br>1. This element is located in the amplifiers which are contained in the Tuner. The Tuner is located in the TV processing circuitry located on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>2. This element is located in the amplifiers which are contained in the IF Demodulator. The IF Demodulator is located in the TV processing circuitry which is contained on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>3. This element is located in the amplifier which is connected to the input of the Analog to Digital Converter. The analog to digital converter is located in the TV Signal processing portion of the product, which is contained on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>4. This element is located in the amplifier which is contained in the analog PLL. The analog PLL is contained in the clock generation circuitry located on an integrated circuit contained in the AMD All-in-Wonder HD. | On information and belief, there are many instances of this element contained in AMD Chipsets and Motherboards, including but not limited to the following locations:<br><br>1. This element corresponds to the electrical conductors which supply current to the first input buffer circuitry located in the amplifiers which are contained in the Tuner. The Tuner is located in the TV processing circuitry located on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>2. This element corresponds to the electrical conductors which supply current to the first input buffer circuitry located in the amplifiers which are contained in the IF Demodulator. The IF Demodulator is located in the TV processing circuitry which is contained on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>3. This element corresponds to the electrical conductors which supply current to the first input buffer circuitry located in the amplifier which is connected to the input of the Analog to Digital Converter. The analog to digital converter is located in the TV Signal processing portion of the product, which is contained on an integrated circuit contained in the AMD All-in-Wonder HD.<br><br>4. This element corresponds to the electrical conductors which supply current to the first input buffer circuitry located in the amplifier which is contained in the analog PLL. The analog PLL is contained in the clock generation circuitry located on an integrated circuit contained in the AMD All-in-Wonder HD. |

25  (Ex. D at 81.) Bender simply added claim language and generic electronics components to his
26  original list of vague "locations." Bender's "revisions" are equally deficient for the remaining

---

[2] Exhibits A to P are exhibits to the March 17, 2010 declaration of Sara Jeruss in support of this motion to strike.

"representative" products. (*See* Ex. D (redline comparison of original and revised contentions).) Bender's amended claim charts are otherwise virtually the same as the original claim charts. Bender also failed to make any significant changes to the product groupings.

AMD is not the only party to take issue with Bender's ongoing failure to provide a theory of infringement or Local Rule compliant infringement contentions:

- On March 11, 2010, Judge Fogel dismissed Bender's complaint against LG Electronics, NEC Corp., Pioneer Electronics, and Sharp Electronics for failure to sufficiently allege a claim for infringement. (Ex. K.)

- On February 26, 2010, Judge Armstrong dismissed Bender's complaint against Motorola, *Bender v. Motorola, Inc*. No. 09-1245 SBA, 2010 WL 726739 (N.D. Cal. Feb. 26, 2010). Judge Armstrong found Bender's allegations "too conclusory to provide 'fair notice' of the basis of Plaintiff's claim." *Id.* at *3. Judge Armstrong ruled that Bender's attempt to allege infringement against all products that contain amplifiers did not even satisfy Rule 8: "Plaintiff has done nothing more than recite a laundry list of electronic devices. These cursory allegations are insufficient to give the Defendant fair notice of the claims being alleged against it." *Id.*

- Bender is subject to five other orders finding his infringement contentions to be inadequate and requiring amended infringement contentions. *See Bender v. Micrel*, No. C 09-01144 SI, 2010 WL 520513 (N.D. Cal. Feb. 6, 2010). (*See also* Exs. L and M; Docket No. 27 (Nov. 23, 2009 Huffsmith Decl.) Exs. E and F.)

- Bender agreed to amend his infringement contentions after being threatened with motions to compel in four cases. (*See* Exs. G at 1; H at 1; I at 5; N at 1.)

- After receiving deficient amended contentions, Broadcom, Maxim, Freescale, and IBM filed motions to strike, which are pending. (Exs. G-J.)

On March 15, 2010, AMD's counsel met and conferred in-person with Bender's counsel. (Jeruss Decl. ¶ 2.) Bender's counsel indicated that Bender is unable to provide more information in infringement contentions. (*Id.* ¶ 4.) The parties determined that they would require the Court to resolve the dispute as to the sufficiency of Bender's amended contentions. (*Id.* ¶ 2.) Bender's counsel indicated that if AMD filed a motion to strike, Bender would submit a declaration from Kenneth Pedrotti[3] in support of Bender's opposition brief. (*Id.* ¶ 4.) The parties agreed to extend

---

[3] Pedrotti is chair of the electrical engineering department at the University of California, Santa Cruz. On March 10, 2010, counsel for Infineon Technologies deposed Pedrotti regarding Pedrotti's testimony in a case involving the same patent and substantially similar infringement contentions. (Ex. O.)

AMD'S RENEWED MOTION TO STRIKE - 3 - CASE NO. C09-01149 MMC (EMC)

the stipulation staying AMD's obligation to serve Patent L.R. 3-3 and 3-4 disclosures. (*Id.* ¶ 3; Docket No. 38.)

## III.   ARGUMENT

### A.   Bender's Amended Infringement Contentions Do Not Comply With Rule 3-1

Bender's amended infringement contentions are completely deficient for at least the following reasons:

- Bender uses the same repetition that he used in the original claim charts, cutting and pasting generic text, and even repeating the same generic text across multiple claim charts. (*Compare* Ex. C at 5 (AMD Geode GX Locations 1-3) *with* Ex. C at 42-43 (AMD 690 Locations 1-3).)

- Bender's amended claim charts continue to accuse AMD's products of infringing through circuitry located in blocks that do not exist in AMD products. (*See, e.g.*, Docket No. 26 at 3 (AMD's CPUs do not include video DACs and thus do not have a "Red Video DAC" or a "Red Video DAC output signal path"); Ex. C at 5 (alleging that AMD CPUs infringe through circuitry that is located in the "the Red Video DAC output signal path").)

- As in the original claim charts, Bender uses hopelessly vague language in the amended claim charts. For example, Bender asserts that the allegedly infringing components are "built out of semiconductor devices and passive circuit components." (*See, e.g.*, Ex. C at 5.) AMD's entire chips are built out of semiconductor devices and passive circuit components, making Bender's statements entirely uninformative.

- Bender purports to represent all 137 accused products with the same three claim charts that Bender used in the original contentions. In the original contentions, Bender stated that the three charts represent (a) AMD Processor Products/AMD Embedded Products/AMD Graphics cards, (b) Chipsets and Motherboards, and (c) AMD TV Tuner Products. (Ex. F at 1.) Now, Bender "explains" that the three charts represent (a) products that all contain graphics processors (which is not accurate), (b) chipsets or products that contain chipsets, and (c) products that contain receivers as well as graphics processors. (Ex. C at 1-2.)

Bender again failed to provide substantive support for using three claim charts to represent 137 products. The original claim charts contend only that "AMD Products make use of Buffered Transconductance Amplifiers." (Ex. F at 1.) The amended infringement contentions now contend (inadequately and without support) that the products in each category use "Buffered Transconductance Architectures." (Ex. C at 1-2.)

### 1. Bender Does Not Specifically Identify Where In The Accused Products The Alleged Infringement Occurs

Bender's original contentions did not comply with Rule 3-1 because they did not "give fair notice . . . as to where the offending circuits are to be found." (Docket No. 45 at 3.) Rule 3-1 requires a patentee to "identify[] specifically *where* each limitation of each asserted claim is found within each Accused Instrumentality." (Docket No. at 2 (quoting Patent L.R. 3-1(c)) (emphasis in original).) *See also Bender v. Infineon Techs. N. Am. Corp.*, No. 5:09-cv-02112-JW (Ex. L at 1-2) [hereinafter *Infineon*]; *Micrel*, 2010 WL 520513, at *2 (finding substantially similar contentions in a companion case inadequate because "[p]laintiff has made no attempt to identify the precise location within defendant's product where the infringing component is located"). (*See also* Ex. Docket No. 26 at 6-7.)

The testimony of Bender's own expert supports AMD's position that Bender's amended contentions are inadequate. Kenneth Pedrotti testified that it would be "entirely possible" for a company such as AMD to achieve high bandwidth and high slew rates using proprietary techniques that do not infringe the '188 Patent. (Ex. O at 119:1-8.) Pedrotti also testified that Bender's claim charts in Infineon -- which contained a comparable level of detail to the AMD claim charts -- did not identify where the claimed structures or components were found within the accused Infineon products. (*Id.* at 63:13-64:25. *See also* Exhibit P (Infineon Claim Charts).) For example, asked whether the Infineon products used buffers, Pedrotti admitted that he did not even know whether the Infineon analog amplifiers use buffers at all. (*Id.* at 83:7-15.)

Like Bender's original contentions and the Infineon contentions, Bender's amended contentions fail to point to a specific structure corresponding to a single actual claim limitation, such as a "first current rail," "second current rail," or "pair of opposing current mirrors," in *any* accused product. For example, Bender now asserts that somewhere among the thousands of transistors located in the Red Video DAC there are "electrical conductors which supply current to the first and second input buffers located in the amplifier which is contained in the Red Video DAC output signal path." (Ex. C at 7.) Bender does not explain which of the components in the Red Video DAC correspond to the "electrical conductors which supply current," or which

AMD'S RENEWED MOTION TO STRIKE      - 5 -      CASE NO. C09-01149 MMC (EMC)

structures correspond to the "first and second input buffers." (*Id. See also* Docket No. 26 at 6-7.) Because Bender does not identify or provide specific locations of structures corresponding to the claim limitations, Bender's amended contentions do not comply with Rule 3-1.

### 2. Bender Does Not Link The Claim Language To The Accused Products

Bender's original infringement contentions did not comply with Rule 3-1(c) because they did not "properly map and link the claim language to each accused product; instead, the locations [were] repeated for each element of every claim, even where inappropriate." (Docket No. 45 at 3. *See also* Docket No. 26 at 4-6.) In *Infineon*, Magistrate Judge Lloyd found substantially similar contentions in a companion case were insufficient because Bender's claim charts "provide[d] generic allegations that [did] not identify specific circuitry or components that reportedly correspond to the claim limitations . . . . Instead, Bender simply repeats the same generic descriptions and cuts-and-pastes them beside each element of every claim." (Ex. L at 3.)

Bender's amended contentions also indiscriminately repeat the same text for every "location" in every product. For example, Bender identifies the "feedback means connecting a final output to the load resistors of at least one of said first and second input stages" in claim 8 as "the network of passive components which provide feedback from the output to one or more nodes within the amplifier located in the amplifier [sic]." (*See, e.g.*, Ex. C at 39.) Bender repeats this text a total of 25 times, 12 for the Geode Processor, 9 for the AMD 690, and 4 for the AMD All-in Wonder HD Tuner. (*Id.* at 39-41, 68-70, 84-85.) These 25 statements are identical except that on occasion a different circuit block is included in the statement -- sometimes the "network of passive components" is allegedly found in a Red Video DAC and sometimes it is allegedly found in an analog PLL. (*See id.*) Bender's use of identical text among three different "representative" charts demonstrates that Bender still has not sufficiently investigated the accused products to determine the applicability of the claim language -- notwithstanding the passage of almost a year since the filing of this complaint.

### 3. Bender Does Not Demonstrate That The 3 "Representative" Products Are Representative Of The Other 134 Allegedly Infringing Products

Bender's initial use of "representative" products did not satisfy Rule 3-1. (Docket No. 45 at 2.) "Mr. Bender's use of representative claim charts [was] improper because he [did] not show[] that any of the accused products for which he has provided claim charts are in fact representative of any other product." (*Id.* at 2.) Specifically, Bender failed to show "that the accused products share the same or substantially the same infringing circuitry as any other product." (*Id.*) Similarly, in *Bender v. Micrel*, Judge Illston found that Bender's attempt to represent 205 products with five claim charts was inadequate: "[s]imply asserting that a patent is ubiquitous within an industry, or that every product defendant has created contains the patented amplifier because one product does, is insufficient to satisfy the Patent Local Rules." 2010 WL 520513, at *2. *See also Infineon* (Ex. L at 3) (finding Bender's product groupings did not satisfy Patent L.R. 3-1 where only evidence to support use of five groups to represent 600 products was "plaintiff's bare assertion").

Bender's product groups have not changed. Bender has placed 137 accused products[4] into the same three categories. (Ex. B at 1-2.) As in *Micrel*, Bender's **only** explanation as to why he has placed 137 products in these three groups is that the products in each category allegedly infringe the patent. (*See, e.g.*, Ex. C at 1-2.) Bender still has not shown any structural or functional similarities among these products.

Bender also continues to ignore significant structural differences between the products. For example, after asserting that the AMD Geode GX is "representative" of the Geode NX, Bender asserts that the infringing components can be found in these products' Red Video DACs, Green Video DACs, and Blue Video DACs, even though the Geode NX does not contain ***any*** video DACs (an issue which Bender fails to address). (*See* Docket No. 26 at 6; Ex. C at 5.) Because Bender's amended contentions improperly group products with significant structural differences, Bender's amended contentions do not satisfy Rule 3-1. (*See* Docket No. 26 at 7-8.)

---

[4] The number of accused products dropped from 141 to 137 because Bender removed "Networking Products," "Older Products," "Processor-in-a-Box," and "AMD64 Architecture and Software manuals" from the accused products list. (*Compare* Ex. B at 1, 3 *with* Ex. E at 1, 3.)

### B. If Bender Is Allowed To Proceed With The Amended Contentions, AMD Will Be Prejudiced

As Bender's original contentions did not facilitate discovery, so Bender's amended contentions will not. "One of the purposes of Patent Local Rule 3-1 is to facilitate the exchange of information between parties so that discovery can proceed in an orderly fashion." *Micrel*, 2010 WL 520513, at *3. (*See also* Docket No. 26 at 8-9.) In *Micrel*, Judge Illston found that it would be inappropriate to force Micrel to produce schematics for 205 products based on five "representative" claim charts. *Id.* Judge Illston criticized Bender's "shotgun" approach, as "[t]he Rules are designed to make discovery manageable, and to reduce the likelihood that defendant will need to spend time and money defending products that were mistakenly included in plaintiff's contentions." *Id.*

AMD will be severely prejudiced if Bender is allowed to proceed with his inadequate amended contentions, just as AMD would have been prejudiced if Bender had been allowed to proceed with the original contentions. (*See* Docket No. 26 at 9-10 (explaining that Bender's insufficient contentions would not allow AMD to properly prepare its defense).) If Bender is allowed to go forward with these contentions, there is a very high likelihood that AMD "will need to spend time and money defending products that were mistakenly included" in Bender's contentions. AMD should not be forced to provide discovery because Bender still has not provided infringement contentions that comply with Rule 3-1.

### C. Bender Cannot Show The Good Cause Necessary To Amend Bender's Infringement Contentions

Patent Rule 3-6 allows a party to amend its infringement contentions ***only*** on a showing of "good cause." Patent L. R. 3-6. Bender does not have "good cause" to amend a second time. Judge Chen's order warned Bender "that he may not be given further opportunities to amend -- *i.e.*, at a certain point, if the contentions continue to be insufficient, they may be stricken." (Docket No. 45 at 3.) Judge Illston gave Bender a similar warning: "If the amended contentions are again insufficient, the Court will be prepared to reconsider a motion to strike." 2010 WL 520513, at *3. Inexplicably, Bender filed amended infringement contentions that contain the

AMD'S RENEWED MOTION TO STRIKE           - 8 -           CASE NO. C09-01149 MMC (EMC)

1  exact same flaws as the original, insufficient contentions.  Bender's latest failure to comply with
2  Rule 3-1 shows that further amendment will be futile -- there is no reason to believe that another
3  set of amended contentions will not be deficient.  Because Bender cannot establish good cause to
4  amend, the Court should strike Bender's infringement contentions.

### IV. CONCLUSION

For the foregoing reasons, AMD respectfully requests that the Court strike Bender's infringement contentions.

Dated:  March 17, 2010         MARK E. MILLER
                               O'MELVENY & MYERS LLP

                               By:    /s/ *Mark E. Miller*
                                      Mark E. Miller

                               Attorney for Defendant and Counterclaimant
                               ADVANCED MICRO DEVICES, INC.